IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC. : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO.   13-5358 |
| MARK BROADNAX, individually and : | |
| d/b/a CHE'S BAR & GRILL a/k/a : | |
| CHENAX; CHENAX, INC. : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                       March 18, 2015

  Currently pending before the Court is the Motion for Summary Judgment by Plaintiff J&J Sports Productions, Inc.  For the following reasons, the Motion is denied.

**I. FACTUAL BACKGROUND**

  A Championship Fight Program, *"Star Power": Floyd Mayweather, Jr. v. Victor Ortiz, WBO Welterweight Championship Fight Program*, was telecast nationwide via closed-circuit television on Saturday, September 17, 2011 (the "Program").  (Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 1; Defendants' Response to Statement of Undisputed Facts ("DRSUP" ¶ 1.) Plaintiff was granted the exclusive commercial distribution rights to the Program, which encompassed all undercard events as well as the main events.  (PSUF ¶ 2; DRSUP ¶ 2.)  Plaintiff thereafter marketed the sub-licensing (commercial exhibition) rights to its commercial customers.  (Affidavit of Joseph Gagliardi ("Gagliardi Aff."), ¶ 3, Sept. 24, 2014.)  The Program was legally available to commercial establishments only through an agreement with Plaintiff. (Id. ¶ 3.)  Those establishments had to pay a commercial sublicense fee to broadcast the Program based on the capacity of the establishment.  (Id. ¶ 8.)  The commercial fee to broadcast the

Program for an establishment the size of Che's Bar and Grill a/k/a Chenax was $2,200.  (Id. ¶ 8.)

At all times relevant to this litigation, Defendant Che Nax, Inc. owned and operated the commercial establishment doing business as Che's Bar and Grill a/k/a Chenax, located at 6364 Stenton Avenue, Philadelphia, Pennsylvania.  (PSUF ¶ 3; DRSUP ¶ 3.)  Defendant Mark Broadnax was the President and sole shareholder of Che Nax, Inc., as well as the manager of the establishment, at the time of the broadcast of the Program.  (PSUF ¶ 4; DRSUP ¶ 4.)  In addition, Broadnax was identified as the President, Secretary/Treasurer, Director, Stockholder, and Manager/Steward of Che Nax, Inc. on the liquor license issued to Che Nax, Inc. for its commercial establishment Che's Bar and Grill.  (PSUF ¶ 6; DRSUP ¶ 7.)  He was also listed as President of Che Nax, Inc. on the Business Entity Filing History.  (PSUF ¶ 7; DRSUP ¶ 7.)  Defendant Broadnax was present and inside the establishment on the night that the Program was telecast nationwide.  (PSUF ¶ 5 DRSUP ¶ 5.)  Plaintiff did not sublicense the Program to either Defendant Mark Broadnax—individually and doing business as Che's Bar and Grill, also known as Chenax—or Che Nax, Inc. doing business as Che's Bar and Grill, also known as Chenax (collectively "Defendants").  (Gagliardi Aff. ¶ 7.)

Facing serious erosion in the sales of its proprietary programming to commercial customers, Plaintiff embarked upon a nationwide program to police signals in order to identify and prosecute commercial establishments that pirated its programming.  (Id. ¶ 5.)  To do so, it retained auditors and law enforcement personnel to detect and identify pirate signals.  (Id. ¶ 6.)  Plaintiff's programming cannot be mistakenly, innocently, or accidentally intercepted because its programming is encrypted and it is only after Plaintiff authorizes a commercial activation that a commercial establishment may broadcast the signal.  (Id. ¶ 9.)  There are, however, several

methods by which a signal pirate can unlawfully intercept and broadcast Plaintiff's programming, including: use of a "blackbox," "hotbox," or "pancake box"; use of a "smartcard," "text card," or "programming card;" purposeful misrepresentation of a commercial establishment as a residential property to allow fraudulent purchase at the residential rate; the use of an illegal cable drop or splice from an adjacent apartment or home; or the purchase of other illegal unencryption devices or illegal satellite authorization codes. (Id. ¶ 10.)

On September 17, 2011, the night of the Program broadcast, a private investigator by the name of David E. Callis, was hired by Plaintiff to visit the premises at 6364 Stenton Avenue, Philadelphia, PA. (Pl.'s Mot. Summ. J., Aff. of David Callis ("Callis Aff."), April 11, 2012.) Investigator Callis entered the premises at 9:00 p.m. and paid a $5.00 admission charge. (Id.) He counted twelve patrons in the establishment and noticed three televisions for viewing. (Id.) He stated as follows:

> I observed all three television sets tuned to the under card of the Floyd Mayweather/Victor Ortiz PPV event billed STAR POWER. I specifically observed the bout between Jessie Vargas and Josesito Lopez. The fight was in the 1st round. Lopez had on gold and white trunks. Vargas had on red and white trunks. The ring mat displayed the TECATE logo in red and the ring posts were marked MGM.

(Id.) He did not indicate how long he was in the bar. (Id.)

According to Defendants, the bar collected a cover charge at the door every Friday and Saturday night, including the night of September 17, 2011. (Affidavit of Mark Broadnax ("Broadnax Aff") ¶ 5, Feb. 20, 2015.) They assert that the establishment did not, at any time, either with or without Broadnax's authorization, broadcast or otherwise publish Plaintiff's program, *"Star Power": Floyd Mayweather, Jr. v. Victor Ortiz WBO Welterweight Championship Fight Program*." (Id. ¶ 6.) Further, Defendants contend that their cash and credit

card records reveal no corresponding increase in revenues on the weekend of the Program showing compared to other weekend revenues when no Program was aired by Plaintiff. (Id. ¶ 16.)

Plaintiff instituted the current litigation on September 13,, 2013, setting forth three counts as follows: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion. On February 6, 2015, Plaintiff filed the current Motion for Summary Judgment. Defendants submitted their Response on February 20, 2015, and Plaintiff filed a Reply Brief on March 2, 2015. The Motion is now ripe for judicial consideration.

**II.   STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the

light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

### III.   DISCUSSION

Plaintiff currently seeks summary judgment on its cause of action under 47 U.S.C. § 553 and 47 U.S.C. § 605. In addition, Plaintiff requests both statutory damages and enhanced statutory damages. The Court finds that a genuine issue of material fact exists as to liability and thus need not reach the question of damages.

Title 47 of the United States Code, Section 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Title 47 of the United States Code,

Section 605 provides, in pertinent part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a). "Both statutes prohibit the unauthorized interception and exhibition of communications and both statutes require the plaintiff to show that the defendants intercepted a broadcast, were not authorized to intercept the broadcast, and showed this broadcast to others." J & J Sports Prods., Inc. v. Gencarelli, No. Civ.A.10-4375, 2012 WL 266419, at *3 (D.N.J. Jan. 30, 2012) (citations omitted). "In addition, both statutes allow enhanced damages if the plaintiff proves that the defendants willfully intercepted the broadcast for commercial advantage or private financial gain." Id. Violation of §§ 553 and 605 is a strict liability offense. J & J Sports Prods., Inc. v. Gonzalez, No. Civ.A.12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013).

Plaintiff's Motion for Summary Judgment fails at the first element of unauthorized interception. Plaintiff asserts that its investigator, David Callis, provided a sworn affidavit that he observed the broadcast of one of the preliminary fights in the Program at Defendants' establishment. While such evidence might be sufficient to establish liability in the absence of

any contrary evidence, Defendants have produced such contradictory evidence. By sworn affidavit, Defendant Broadnax avers that the Program was not shown at the establishment.[1] Moreover, via account receivables from its various financial institutions, Defendants show that the business revenues for the weekend of September 17, 2011 were no different than those for any other weekend that month. (Defs.' Resp. Opp'n, Exs. G3 & G-4.) Finally, Defendants convincingly argue that despite the prevalence of cell phone cameras, Investigator Callis offers

---

[1] Plaintiff takes issue with (1) Defendants' denial of Plaintiff's statement that Defendants showed the Program on the night in question; and (2) Defendants' allegation, in paragraph sixteen of their statement of additional facts, that "Defendants did NOT intercept, receive, publish or otherwise exhibit the Program on or about September 17, 2011, or any similar programming without license or authority to do so." (Defs.' Resp. Opp'n 3, ¶¶ 8, 16.) Those paragraphs contain no citation to any evidence. Thereafter, in paragraph seventeen, Defendants argue that "[c]ontrary to that stated by Plaintiff, Broadnax and Che Nax have continuously maintained that the Program was not shown at the establishment as alleged." (Id. at 3, ¶ 17.) Plaintiff notes, however, that this paragraph contains only a general citation to Broadnax's Affidavit, which, under Federal Rule of Civil Procedure Rule 56(c)(1)(A), is not a citation to a particular part of materials in the records.

Plaintiff's argument ignores the forest for the trees. Although Federal Rule of Civil Procedure 56(e)(2) states that "[i]f a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed or purposes of the motion," Fed. R. Civ. P. 56(e)(2), this Court does not find that Defendants failed to address any crucial fact by Plaintiff. Defendants' response to Plaintiff's assertion of fact in paragraph eight simply states, "denied," without any citation to evidence. Immediately thereafter, however, paragraphs sixteen and seventeen of Plaintiff's Opposition restate that denial and expressly rely on Broadnax's Affidavit. That Affidavit is a two and a half page document consisting of sixteen short allegations. The Court need not dig through extensive averments in order to find Broadnax's abundantly clear denial that Defendants unlawfully broadcast the Program. (Broadnax Aff. ¶ 6.) For the Court to disregard such evidence simply because Defendants' opposition brief did not specify the paragraph number of the crucial averment would deny justice on the grounds of technical missteps.

Plaintiff also takes issue with Defendants' assertion that "his employees will testify, that the Program was not shown at the establishment." (Defs.' Resp. Opp'n Summ. J. 5.) Plaintiff contends that this is merely hearsay evidence not supported by any deposition testimony or affidavits from such employees. While Plaintiff is technically correct, the Court need not rely on such statements in order to find the existence of an issue of material fact. Rather, Broadnax's affidavit alone would allow a reasonable juror to find in favor of Defendants as to liability.

no photographs from inside the establishment showing the fight, and that there remains a distinct possibility that Callis saw only a free broadcast of an undercard bout, without realizing that the main fight never aired.

In short, it is precisely these types of factual disputes that preclude the entry of summary judgment. Without engaging in a credibility analysis—a matter reserved for a trier of fact—the Court cannot determine as a matter of law whether Defendants unlawfully broadcast the Program on September 17, 2011. Considering all evidence and the reasonable inferences in the light most favorable to the non-moving party, the Court finds that a genuine issue of material fact remains as to the first element of a claim under 47 U.S.C. § 553(a)(1) and 47 U.S.C. § 605. Accordingly, Plaintiff's Motion for Summary Judgment must be denied.

An appropriate Order follows.